UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-~~4181-SNOW~~
6204 CR Zloch

UNITED STATES OF AMERICA,

vs.

COURTNEY MARKS,

Defendant.
_____/

## DETENTION ORDER

Pursuant to Title 18 U.S.C. § 3142(f), on July 27, 2000, a hearing was held to determine whether the defendant, **Courtney Marks**, should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions of release will reasonably ensure the appearance of this defendant as required. Therefore, it is hereby ordered that the defendant, **Courtney Marks**, be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. The defendant is charged with attempting to export over $10,000 in U.S. currency without filing a Report of International Transportation of Currency, in violation of 31 U.S.C. §§ 5316 and 5322. Therefore, the defendant is charged with neither a crime of



violence nor a crime involving a narcotic drug. 18 U.S.C. § 3142(g)(1).

2.  The Court received credible evidence that the defendant committed the offense with which he has been charged.  On July 19, 2000, **Courtney Marks** checked two pieces of luggage onto Air Jamaica flight #86 to Kingston, Jamaica from Fort Lauderdale/Hollywood International Airport.  On that same date and flight, Paulette Haye also checked two pieces of luggage.  Customs inspectors x-rayed the checked baggage for that flight and discovered a large amount of United States currency secreted inside two bags checked by **Marks** and one bag checked by Haye.  Customs officials discovered seven packages inside the bags, containing a total of $249,756; more than half this amount was located within **Marks'** bags.  Each package had been wrapped in black tape and concealed within clothing and bed linens.  A breakdown of the $249,756 revealed the following numbers of bills and denominations: 99 bills- $100 denomination; 206 bills - $50 denomination; 9,848 bills - $20 denomination; 2,305 bills - $10 denomination; 1,807 bills - $5 denomination; 511 bills - $1 denomination.

As **Marks** entered the jetway to board the Air Jamaica flight, Customs inspectors advised him both orally and in writing of the U.S. currency reporting requirements, specifically, that he must file a Customs Form 4790 if he is transporting more than $10,000 outside the United States.  **Marks** responded that he understood the reporting requirements and that he did not have $10,000 or more in his possession.  He stated that he was carrying approximately $1,200 in U.S. currency and had no other currency or monetary instruments in his possession.  He added that all items in his baggage belonged to him, that he had packed his own bags, and that he was not transporting any items for

2

anyone else.

Customs agents also approached passenger Haye after she had already boarded the aircraft. They advised her both orally and in writing of the U.S. currency reporting requirements. Haye stated that she understood the reporting requirements. She revealed that she was in possession of more than $10,000 but was unaware of the exact amount of currency. She added that the currency had been provided to her by somebody else.

Thereafter, agents advised Haye of her <u>Miranda</u> rights, and she waived the same. During her interview, she told agents that passenger **Marks** had asked her to transport an undisclosed amount of U.S. currency back to Jamaica for him. **Marks** had told her that he might encounter trouble if he were to carry all of the money himself. Haye stated that she concealed the currency in a bedspread within her luggage because she did not want anyone to steal it.

Agents also advised **Marks** of his <u>Miranda</u> rights, and he too waived the same. During his interview, he told agents that an unknown individual had delivered the packages of currency to him at a café in Miami. He stated that he was to deliver the currency to his brother in Jamaica. He stated that his brothers own a vehicle business for which he (**Marks**) also works. **Marks** stated that he assumed the money was to be used for the purchase of automobiles, although he was not certain. He stated that he asked Haye to carry some of the money so as not to attract the attention of dishonest baggage handlers.

Finally, no Report of International Transportation of Currency or Monetary Instruments, Customs Form 4790, is on file in the name of either **Courtney Marks** or Paulette Haye. 18 U.S.C. § 3142(g)(2).

3. The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. The defendant was born and raised in Jamaica and now holds dual citizenship in both Jamaica and the United States. At the time of his arrest, he told agents that he lives in Jamaica, and he provided them with a Jamaican address. However, he told Pretrial Services that he has lived between Memphis, Tennessee and Jamaica for the past two to three years and that he previously lived between Atlanta and Jamaica for four years and between Houston and Jamaica for five years. Receipts from his recent stay at a Tamarac hotel reveal that he provided them with a Georgia address. At the time of the defendant's arrest, he was in possession of driver's licenses from Florida, Georgia, and Jamaica, all in his true name.

The defendant advised that his father, four brothers, and one sister all reside in Jamaica. He stated that his wife and two minor children reside in Memphis, Tennessee.

Agents seized both a United States passport and a Jamaican passport from the defendant. His passport revealed at least 16 foreign trips since the beginning of the year 2000, including 10 trips to Panama, 1 trip to the Cayman Islands, and 2 trips to Colombia. Agents also seized from the defendant an unused ticket for travel to England.

The defendant stated that he has been self-employed for the past 4 to 5 years as an automobile broker, earning approximately $1,500 to $2,000 per month; he reportedly purchases automobiles at auction and transports them to Jamaica. He claimed modest assets, including $10,000 (Jamaican) in a Jamaican bank and two automobiles with a combined value of $5,000 (U.S.). He further indicated that he owns land in Jamaica valued at $20,000 (U.S.).

Given the defendant's lack of financial and emotional ties to the Southern District

4

of Florida, his (dual) Jamaican citizenship, his extensive Jamaican ties, and his frequent foreign travel, the undersigned does not believe that he would be likely to appear if released on bond prior to trial.   18 U.S.C. § 3142(g)(3)(A) and (B)

4.    The Government did not argue, and, accordingly, the undersigned does not find that the defendant constitutes a danger to the community. 18 U.S.C. § 3142(g)(4).

5.    The Court specifically finds that there is no condition or combination of conditions of release that reasonably will ensure the defendant's appearance as required. 18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that this defendant presents a risk of flight if released on bond prior to trial.  The Court hereby directs:

1.    That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

2.    That the defendant be afforded reasonable opportunity for private consultation with counsel; and

3.    That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an

appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 28th day of July 2000.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Lawrence J. Kerr, Esquire
1401 Brickell Avenue, Suite 700
Miami, Florida 33131
Attorney for Defendant

Jeffrey Kaplan, Esquire
United States Attorney's Office

United States Marshal

United States Pretrial Services